```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF MARYLAND

                                :
DAVID BAYLES, et al.
                                :

     v.                         :   Civil Action No. DKC 20-3322

                                :
MARSH REALTY & ASSOCIATES, LLC,
et al.                          :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this action alleging negligent and fraudulent concealment of lead in property is a joint motion to dismiss counterclaim and crossclaim. (ECF No. 12). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to dismiss will be granted in part and denied in part.

**I.   Background**

Plaintiffs David and Candace Bayles ("the Bayles" or "the Buyers") filed a complaint and amended complaint against Defendants Andrew Earl Keefer and Kaitlyn Nicole Lein (a/k/a Kaitlyn Keefer, "the Sellers"), as well as their listing agent Defendant Craig Marsh and his affiliated real estate agencies, Defendants Marsh Realty & Associates, LLC and Homebuilders

Marketing, Inc., (collectively, "the Agents").[1]  The complaint arises out of Plaintiffs' purchase of the property at 538 Wilson Place, Frederick, Maryland 21702 ("the Property").  Plaintiffs allege that Defendants were aware of "the existence of lead-based paint" in the Property from the "Lead Paint Inspection Report" that purportedly found "dangerous levels" twenty days before the Contract was signed (see ECF No. 8-2), but they failed to disclose this fact, and checked the boxes that said they had "no knowledge" of any lead based hazard or reports.  (ECF No. 8-3, at 12).  The Bayles allege they were exposed to "harmful levels of lead" within the home that allegedly required their family (including a two-year old and unborn baby) to undergo various medical testing.  They were displaced from the Property and incurred "significant" costs associated with the removal of the lead.  The complaint alleges 1) a violation of 42 U.S.C. §4852d for failing to disclose the presence of lead-based paint, 2) Fraud, 3) Negligence and "Negligence Per Se", and 4) Negligent misrepresentation.  (ECF Nos. 1 and 8).[2]

The Agents filed a combined answer to the amended complaint, counterclaim against the Buyers, and crossclaim against the

---

[1] The agent for the Buyers was Jenn Werner from RE/MAX town Center, but she is not alleged to have committed any wrongdoing. (See ECF No. 8-3, at 11, "ACTING AS: BUYER AGENT").

[2] The Residential Contract of Sale ("the Contract") is attached as an exhibit.  (ECF No. 8-3).

2

Sellers. The counterclaim contains a single claim for "Contractual Indemnification for Attorneys' Fees and Litigations Costs." The Agents observe that the amended complaint alleges that they acted as "agents and representatives of the [S]ellers" under the Contract,[3] but that contract contains an indemnification and hold harmless clause. In the "event no judgment is entered against them in this action," they "demand that judgment be entered in their favor and against" the Buyers and that they be indemnified for all costs and attorney's fees. The crossclaim raises three, somewhat similar theories against the Sellers, demanding 1) Indemnification because of their "acts, errors, omissions, representations, misrepresentations, concealments and/or breaches", 2) Contribution, arguing that, even accepting the allegations as true, any damages are a result of conduct by the Sellers, and not the Agents, and 3) "Contractual Indemnification." (ECF No. 9).

The Sellers, appearing *pro se*, filed their own answer to the amended complaint (ECF No. 11), and joined with the Bayles in the now-pending "Joint Motion to Dismiss Counterclaim and Cross-claim." (ECF No. 12). The Agents filed their opposition to this motion (ECF No. 13), and the Buyers filed their reply. (ECF No. 14).

---

[3] The listing brokerage on the sale is shown as "Marsh Realty," with "Craig Marsh" as the listing agent. (ECF No. 8-3, at 11).

**II.   Standard of Review**

The Buyers and Sellers move to dismiss the counterclaim and crossclaim filed by the Agents pursuant to Fed.R.Civ.P. 12(b)(6). When reviewing a Rule 12(b)(6) motion to dismiss a counterclaim, "[t]his Court applies the same standard of review that would be applied to a Rule 12(b)(6) motion to dismiss a complaint." *Sand Canyon Corp. v. Bank of N.Y. Mellon*, No.: GLR-19-2815, 2020 WL 5250288, at *2 (D.Md. Sept. 3, 2020) (quoting *First Data Merch. Servs. Corp. v. SecurityMetrics, Inc.*, No. RDB-12-2568, 2013 WL 6234598, at *3 (D.Md. Nov. 13, 2013)).  A motion to dismiss under Fed.R.Civ.P. 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  In evaluating the complaint, unsupported legal allegations need not be accepted.  *Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989).  Legal conclusions couched as factual allegations are insufficient, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), as are conclusory factual allegations devoid of any reference to actual events.  *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)).   Thus,

4

"[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

**III. Analysis**

The Agents' claims for indemnification based on the contract are not yet ripe as the Bayles and the Sellers argue in their joint motion and reply. (*See* ECF Nos. 12-1, at 7 and 14, at 3). The Agents quote the "BROKER LIABILITY" and "ATTORNEY'S FEES" paragraphs of the Contract in full but fail to recognize the dispositive provision within these sections. (ECF No. 9, at 9) (citing ECF No. 8-3, ¶¶ 26 and 36). The joint motion quotes to the same paragraph that outlines the parties' rights to attorney fees, but highlights the critical passage: "Buyer and Seller jointly and severally, agree to Indemnify and hold Broker(s) harmless from and against any and all liability, loss, cost, damages, or expenses (including filing fees, court costs, service of process fees, transcript fees and attorneys' fees) incurred by Broker(s) in such action or proceeding, *providing that such action or proceeding does not result in a judgment against Broker(s).*" (ECF No. 12-1) (quoting ECF No. 8-3, ¶ 36) (emphasis added by parties).

Plaintiffs argue that this language creates a condition precedent to recovery of expenses. The Court of Appeals of

5

Maryland in *Gilbane Bldg. Co. v. Brisk Waterproofing Co.*, 86 Md. App. 21, 26 (1991), explained that the matter is one of normal contract construction, based on the expressed intent of the parties. The term "providing that" in the clause in question clearly indicates that nonjudgment is a precondition to the broker's indemnity. Even more centrally, the Agents' final prayer for relief in their counter/crossclaim, by its express terms, only seeks a remedy "in the event no judgment is entered against them." (ECF No. 13, at 8).[4]

The Agents attempt to distinguish the *Gilbane* decision by asserting that Md. Rule 2-705, effective many years later, controls and abrogates it. The rule does require that a party seeking attorneys' fees based on a contractual fee shifting provision "include a claim for such fees in the party's initial pleading."

---

[4] While the parties to the joint motion argue that the Agents seek "indemnification from the Plaintiff for their own fraudulent and negligent acts," this is clearly not the case from the face of the counter and cross-complaint. The Agents reiterate in opposition that their claim is not exculpatory in nature, as it does not seek to cover fraudulent or negligent acts (ECF No. 13, at 7-8). Whether a clause seeking indemnification for "active" negligence is against public policy under Maryland law, therefore, is not relevant. (*See* ECF Nos. 12-1, at 10-11 and ECF No. 14, at 6). Neither is the Agents' discussion of *Adloo v. H.T. Brown Real Estate, Inc.*, 344 Md. 254, 259-60 (1996), particularly as that case was in an entirely different procedural posture: on appeal from a jury award, after trial. Similarly, the fact that the counterclaim and crossclaim are "sanctioned" by Fed.R.Civ.P. 13 because they arise out of the same transaction and occurrence as Plaintiffs' complaint has little bearing, as it is not challenged on these grounds. (*See* ECF No. 13, at 12).

As a state procedural rule, it does not apply in federal court. Moreover, the rule does not require that the claim be brought as a counter and/or crossclaim.

None of the parties has addressed whether state or federal law governs the question of proper pleading or ripeness. Nevertheless, in a case cited to by both parties, Judge Hollander provides some guidance:

> The Fourth Circuit has explained: "The rule . . . creates a division in the handling of attorneys['] fees claims between the claims that are not part of the underlying substantive claim, which must be made by motion, and claims that are an element of damages, which presumably must be made by complaint." *Carolina Power & Light* [*Co. v. Dynegy Mktg. & Trade*,] 415 F.3d [354, 358 (4th Cir. 2005)]. For example, attorney's fees claimed under a contract must be pled as damages if a contractual breach is a "condition precedent" to recovery. *See id.* [at] 358–62. As case law makes clear, however, a defendant's claim for fees pursuant to a contractual prevailing party provision is not an element of damages, because the claim is based on the outcome of litigation, not the merits of the underlying substantive claim. *See Carolina Power & Light*, 415 F.3d at 358–62; *Grove v. George, 192 Md.App.* 428, 437, 994 A.2d 1032, 1037 (2010). Although the parties did not address whether state or federal law controls the categorization of attorney's fees as damages, this distinction holds in either circumstance.

*Lawley v. Northam*, No. ELH-10-1074, 2013 WL 17864, at *25 (D.Md. Apr. 24, 2013).[5]  Judge Hollander explained that the court in *Carolina Power* had been careful to distinguish between clauses that grant attorneys' fees as an element of damages and those, like the one here, that simply act as a "collateral fee-shifting mechanism for the prevailing party."  *Id.*, at *26 (citing *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196 (1988)).  The Agents themselves describe the clause as merely a form of "reimbursement of litigation costs and fees only under certain circumstances." (ECF No. 13, at 8-9).

When such a collateral, fee-shifting provision is involved, the Buyers and Sellers are right that *Lawley* provides that the proper mechanism for the Agents to bring their claims is Fed.R.Civ.P. 54:

> In 1993, the Supreme Court adopted Fed.R.Civ.P. 54(d)(2), to "establish[ ] a procedure for presenting claims for attorneys' fees."  Fed.R.Civ.P. 54(d)(2) advisory committee note (1993); *see Carolina Power & Light Co. v. Dynegy Mktg. & Trade*, 415 F.3d 354, 358 (4th Cir. 2005) (discussing passage of Fed.R.Civ.P. 54(d)(2)).  Entitled Attorney's Fees, Rule 54(d)(2) provides: "(A) Claim to be made by motion. A claim for attorney's fees and related nontaxable

---

[5] While the Buyers and Sellers are correct that the case is largely devoted to a discussion of whether a third-party beneficiary can invoke an indemnification clause (ECF No. 14, at 5-7), its discussion of the rights to attorneys' fees in this context is applicable; as the indemnity issue is collateral to the issues raised in the complaint, a pleading rule is procedural and governed by the federal rules under the *Erie* doctrine.

> expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages." (Emphasis added). To illustrate, the 1993 Advisory Committee Note states that Rule 54(d)(2) "does not . . . apply to fees recoverable as an element of damages, as when sought under the terms of a contract; such damages typically are to be claimed in a pleading and may involve issues to be resolved by a jury."

*Lawley*, 2013 WL 1786484, at *25 (footnote omitted). The rule provides a means by which a party can file for costs or attorney's fees *after judgment* by motion "unless the substantive law requires those fees to be proved at trial as an element of damages."

Moreover, as Judge Hollander held, even if Maryland law did apply, in *Grove v.* George, 192 Md. App. 428 (2010), the "Court of Special Appeals held that a defendant seeking attorney's fees under a contract's prevailing party provision was not required to make a claim for breach of contract or damages prior to judgment." *Lawley*, 2013 WL 1786484, at *26 (quoting *Grove*, 192 Md.App. at 437); *see also KBE Bldg. Corp. v. DIW Grp., Inc.*, No. 1060, Sept. Term, 2014, 2015 WL 5944695, at *4 n.3 (Md. Aug. 17, 2015) (citing *Heritage Harbour, L.L.C. v. John J. Reynolds, Inc.*, 143 Md.App. 698 (2001) ("[A]ppellants' claims are predicated upon future events that may never occur — a finding in favor of Plaintiffs in the Underlying Suit.")) (unreported decision finding an indemnity claim was not ripe as it similarly was "predicated upon a future

event that might not have occurred" — an adverse judgment against the plaintiff and in favor of a third party).

The claims for contractual indemnification, both under the crossclaim and counterclaim, will be dismissed.  Of course, the Agents may seek by motion attorney's fees and other litigation expenses after judgment, if they are prevailing parties.

The other two claims in the crossclaim against the Sellers are not included in the counterclaim against the Buyers, and the joint motion is far from comprehensive as to those claims.  The joint motion contains a separate argument for dismissal of the common law indemnification claim, but only mentions "contribution" in passing.

Any general "indemnification" claim is precluded by the contractual indemnification clause that already governs the dispute.  The court in *Nat'l Labor Coll. Inc. v. Hillier Grp. Architecture N.J., Inc.*, 739 F.Supp.2d 821, 830 (D.Md. 2010) wrote,

> Defendant has a clear contractual duty to indemnify Plaintiff for specifically enumerated circumstances in the contract. Any implied common law indemnification scheme would either contradict or add to these clearly defined circumstances in the contract. Therefore, because a claim for common law indemnity would be incongruent with the express provisions, the court must dismiss this claim.

So too are the Agents' claims of general indemnification precluded by the contractual provision governing such claims.

10

The claim for contribution in the crossclaim is of a different stripe. The Agents allege there that even if the allegations against them are taken as true, "any damages suffered by original plaintiffs Bayles are and were the result of the acts, errors, omissions, representations, misrepresentations, concealments and/or breaches of defendant/cross-defendants Keefer." Thus, the Agents seek "contribution and judgment" over the Sellers, "jointly and severally, individually and collectively, as to any judgment which may be entered in this action" against them. They argue they are entitled to "contribution and judgment" because any damages suffered were through no fault of their own. (ECF No. 9, at 13, 15).

Contribution is when one joint wrongdoer seeks equitable cost sharing with another joint wrongdoer. *Parler & Wobber v. Miles & Stockbridge*, 359 Md. 671, 684 (2000). In Maryland, there was no common law right of contribution among joint tortfeasors, only where "a wrongful act of a party imposed liability on a third party; in such instances the latter could seek indemnification from the party actually guilty of the wrongful act." *Id.*, at 683. The dichotomy was addressed by adoption of the Uniform Contribution Among Tortfeasors Act (UCATA). *See Hepburn ex rel Hepburn v. Athelas Inst. Inc.*, 324 F.Supp.2d 752, 757 & n.3 (D.Md. 2004) ("[T]he Contribution Act codifies a general contribution right" as "[t]here is no contribution right at common law.")

11

A recent Court of Appeals of Maryland case explained:

> To remedy the inherent unfairness arising from the common law prohibition against contribution among joint tortfeasors, in 1939, the National Conference of Commissioners on Uniform State Laws ("Commissioners") passed the Uniform Contribution Among Joint Tortfeasors Act. *Valk*, 317 Md. at 190-91. In 1941, the Maryland General Assembly "enacted a modified version of the UCATA." *Id.* at 190. As this Court explained shortly after its passage, "[t]he primary purpose of the [UCATA] was to create a right of contribution among joint tortfeasors which did not exist at common law . . . and to establish a procedure whereby that right might be made effective in practice." *Id.* (citing *Balt. Transit Co. v. State ex rel. Schriefer*, 183 Md. 674, 679, (1944)). Although the uniform law was revised in 1955, "Maryland retained, for the most part, the version it originally adopted." *Id.*
>
> Under the UCATA, "[t]he right of contribution exists among joint tort[ ]feasors." CJ § 3-1402(a). The statute defines joint tortfeasors as "two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them." CJ § 3-1401(c). The right to contribution under the UCATA is predicated on a third-party's direct liability to the plaintiff. *See Valk*, 317 Md. at 199. "A joint tortfeasor must be legally responsible to the plaintiff for his or her injuries." *Id.* at 200. This right is also inchoate, until one joint tortfeasor has by payment discharged the common liability or has paid more than a pro rata share of the common liability. CJ § 3-1402(b); *Valk*, 317 Md. at 191.

*Gables Constr. Inc. v. Red Coats, Inc.*, 468 Md. 632, 651 (2020) (footnote and string citations omitted).  While the Court of

Appeals of Maryland has made it clear that filing a claim of contribution as a crossclaim is not a prerequisite to collecting under UCATA and *may* be raised by motion after judgment, there is no indication that raising the issue in a crossclaim is prohibited. *Lerman v. Heeman*, 347 Md. 439, 444 (1997) (explaining that Md. R. 2-614, the codification of UCATA, allows for consideration of a "Motion for Contribution" not raised as a crossclaim). In fact, while the right to contribution at this stage of trial is "inchoate" as *Gables* explained, Maryland courts have recognized there is a certain efficiency to adjudicating this derivative issue alongside the underlying dispute, even though the two can standalone. *See e.g., Garlock v. Gallagher*, 149 Md.App. 189, 207 (2003) ("It is important to remember that cross-claims are not mandatory; we allow them to be appended to the primary case for the sake of efficiency, but they just as well may be pursued in a second trial.").

The motion to dismiss treats the claim for contribution as entirely synonymous with the Agents' theory of indemnification by raising no unique grounds for its dismissal (or even discussing it independently). There is efficiency to be gained by joining this claim between Defendants to the current litigation, so that the issue of contribution can be adjudicated once liability (or lack thereof) is established but before final judgment is entered. The

motion to dismiss as it relates to the crossclaim for contribution will be denied.

## IV. Conclusion

For the foregoing reasons, the motion to dismiss the counterclaim is granted. The motion to dismiss the crossclaim is granted in part and denied in part. A separate order will follow.

      /s/      
DEBORAH K. CHASANOW
United States District Judge
